# 23-7625

# United States Court of Appeals
# for the Second Circuit

KARINA SIGALOVSKAYA,

*Plaintiff-Appellant,*

v.

SPECIAL AGENT ABIGAIL BRADEN, SPECIAL
AGENT LUANN WALTER, SPECIAL AGENT MEGAN
BUCKLEY and SPECIAL AGENT ROBERT MANCIENE,
Individually and in their capacity as Special Agent,

*Defendants-Appellees,*

DEPARTMENT OF HOMELAND SECURITY
and "JOHN DOE" #1–10,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

JON L. NORINSBERG, ESQ., PLLC
*Attorneys for Plaintiff-Appellant*
110 East 59th Street, Suite 3200
New York, New York 10022
(212) 227-5700
jon@norinsberglaw.com

1893

# **TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................1

JURISDICTIONAL STATEMENT .........................................................2

QUESTIONS PRESENTED....................................................................3

STATEMENT OF FACTS .......................................................................4

    Defendants Forcefully Enter Plaintiff's Apartment and Conduct a
Warrantless Search .................................................................................4

    Defendants Fail to Procure an Arrest Warrant for Plaintiff, having
Failed to Uncover Any Evidence Against Her During their 8 Month
Investigation...........................................................................................5

    Defendants Unlawfully Search Plaintiff's Apartment, and Refuse to
Leave Despite Plaintiff's Express Directive to Do So. .........................6

    Defendant Braden Returns to the Room Where Plaintiff is being
Unlawfully Detained, and Demands that Plaintiff Write out a
Statement................................................................................................7

    Defendants Show Plaintiff Two Redacted, Non-Pornographic
Photos of Her Daughter, which Plaintiff Readily Identifies..................8

    Defendants Lie About Plaintiff's Statements Regarding the Photos
of Her Daughter, and Falsely Claim that She Made a "Confession." .................9

    Plaintiff is Formally Arrested and Charged Based on Defendants'
False "Confession," Despite the Absence of Any Incriminating
Evidence................................................................................................10

    Plaintiff is Led Away in Handcuffs in Front of Her Friends and
Neighbors, and Thereafter Spends 3 Weeks in a Federal Detention
Facility. ................................................................................................11

i

Judge Irizarry Dismisses All Charges Against Plaintiff, finding that She "Did Not Have Any Criminal Liability or Responsibility" for her Husband's Acts. ..........................................................................12

Plaintiff Continues to Suffer Damages Even After all Charges Are Dismissed ..............................................................................................13

PROCEDURAL HISTORY..................................................................15

STANDARD OF REVIEW ..................................................................17

SUMMARY OF ARGUMENT ............................................................19

ARGUMENT

I.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S FALSE ARREST CLAIM UNDER BIVENS............21

     A. The Supreme Court in Egbert Did Not Alter What Constitutes a "New Context" Under Bivens ....................................21

     B. Plaintiff's Complaint Alleges a Routine Fourth Amendment Claim that Falls Squarely within Bivens..................27

II.  THERE ARE NO "SPECIAL FACTORS" WHICH COUNSEL AGAINST ALLOWING PLAINTIFF'S BIVENS CLAIMS TO PROCEED ........................................................................................32

     A. There are No Border or National Security Concerns Raised by Plaintiff's Claims...............................................................32

     B. There are No Remedial Structures That Would Provide a Remedy for Defendants' Constitutional Violations .................36

          i. By its Express Terms, 8 C.F.R. § 287.10 Applies to "Immigration Officers," Not HSI Agents.........................36

ii. None of the Other Alternative Remedies Has Any Application to this Case ................................................................38

C. The Federal Judiciary is Uniquely Qualified to Adjudicate Claims of Constitutional Violations .........................................40

III. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S MALICIOUS PROSECUTION CLAIM.............................43

A. While Plaintiff's Malicious Prosecution Claim Presents a New Context under Bivens, there are No "Special Factors" Which Require Dismissal of this Claim ...................................43

CONCLUSION ...........................................................................44

CERTIFICATE OF COMPLIANCE ..........................................................46

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases:**

<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>,
    403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ........................... *Passim*

<u>Bracci v. Becker</u>,
    2013 U.S. Dist. LEXIS 3224 (N.D.N.Y. Jan. 9, 2013) .................................... 26

<u>Carlson v. Green</u>,
    446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) ................................ 29, 43

<u>City of Oneida, N.Y. v. Salazar</u>,
    2009 U.S. Dist. LEXIS 85960, 2009 WL 3055274,
    (N.D.N.Y. Sept. 21, 2009) ................................................................................ 26

<u>Correctional Services Corp. v. Malesko</u>,
    534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) ................. 23, 25, 38-39

<u>Davis v. Passman</u>,
    442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) .............................29, 43

<u>Department of Navy v. Egan</u>,
    484 U. S. 518, 530, 108 S. Ct. 818, 98 L. Ed. 2d 918 ..................................... 34

<u>Diaz v. Mercurio</u>,
    442 F. Supp. 3d 701 (S.D.N.Y. 2020) ................................................. 30, 34, 39

<u>Doe v. United States</u>,
    381 F.Supp.3d 573 (M.D.N.C. 2019) .............................................................. 27

<u>Egbert v. Boule</u>,
    142 S. Ct. 1793 (2022) .............................................................................. *Passim*

<u>Engel v. Buchan</u>,
    710 F. 3d 698 (7th Cir. 2013) .......................................................................... 27

iv

Frost v. New York City Police Dep't,
    980 F.3d 23 (2d Cir. 2020)..................................................................44

Garnett v. Undercover Officer C0039,
    838 F.3d 265 (2d Cir. 2016).........................................................42, 43

Gilson v. Alvarez,
    2022 U.S. Dist. LEXIS 115651 (W.D. Tex. June 30, 2022) ............................36

Greenpoint Tactical Income Fund LLC v. Pettigrew,
    38 F.4th 555 (7th Cir. 2022)..................................................................35

Hernandez v. Mesa,
    140 S. Ct. 735 (2020) ............................................... 22-23, 33, 34, 35

Hicks v.  Ferreyra,
    965 F. 3d 302 (4th Cir. 2020)..................................................................25

Higazy v. Templeton,
    505 F.3d 161........................................................................42, 44

Jacobs v. Alam,
    915 F. 3d 1028 (6th Cir. 2019)..................................................................25

Joane v. Hodges,
    939 F. 3d 945 (9th Cir. 2018)..................................................................25

Jocks v. Tavernier,
    316 F.3d 128 (2003).........................................................................42

Johnson v. Rowley,
    569 F.3d 40 (2d Cir. 2009)..................................................................17

Kee v. City of New York,
    12 F.4th 150 (2d Cir. 2021)..................................................................42

Kennedy v. Massachusetts,
    643 F. Supp. 3d 253 (D. Mass. 2022) ..................................25, 31, 36

Kidd v. Mayorkas,
    645 F. Supp. 3d 961 (C.D. Cal. 2022) ...........................................21, 24, 27, 35

Kopec v. Coughlin,
    922 F.2d 152 (2d Cir. 1991) ......................................................................18, 38

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011)..............................................................................31

Lanuza v. Love,
    899 F. 3d 1019 (9th Cir. 2017)..........................................................................41

Lehal v. Cent. Falls Det. Facility Corp.,
    2019 U.S. Dist. LEXIS 49477, 2019 WL 1447261,
    (S.D.N.Y. Mar. 15, 2019)...................................................................................29

Linlor v. Polson,
    263 F. Supp. 3d 613 (E.D. Va. 2017)................................................................38

Manuel v. City of Joliet,
    137 S. Ct. 911, 580 U.S. 357, 197 L. Ed. 2d 312 (2017).................................44

Morse v. Fusto,
    804 F.3d 538 (2d Cir. 2015)..............................................................................42

Palin v. New York Times Co.,
    940 F.3d 804, 810-11 (2d Cir. 2019) ...........................................................17, 38

Powell v. United States,
    2022 U.S. Dist. LEXIS 93314 (S.D.N.Y. May 24, 2022) ................................40

Prado v. Perez,
    451 F. Supp. 3d 306 .........................................................................................29

Salamone v. United States,
    618 F. Supp. 3d 146 (S.D.N.Y. 2022)...............................................................36

Sherman v. United States,
    356 U.S. 369 (1958) ......................................................................41

Smalls v. Collins,
    10 F.4th 117 (2d Cir. 2021)...............................................42, 43, 44

Taber v. Maine,
    67 F.3d 1029 (2d Cir. 1995)...........................................................26

United States v. Brooks,
    2009 U.S. Dist. LEXIS 99997, 2009 WL 3644122
    (E.D.N.Y. Oct. 27, 2009) .............................................................26

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)............................................................17

WC Capital Mgmt., LLC v. UBS Secs., LLC,
    711 F.3d 322 (2d Cir. 2013)...........................................................17

Zahrey v. Coffey,
    221 F.3d 342 (2d Cir. 2000)...........................................................42

Ziglar v. Abbasi,
    137 S. Ct. 1843 (2017) ..........................................................*Passim*

**Rules, Laws & Statutes:**

6 U.S.C. § 113(b) ...................................................................39

6 U.S.C. § 253 .......................................................................39

6 U.S.C. § 345 .......................................................................39

8 C.F.R. § 287.8 ....................................................................36

8 C.F.R. § 287.10 ..............................................................36, 37

18 U.S.C. § 2251(a) ...............................................................10

18 U.S.C. § 2252(a)(4)(B) .......................................................10

Federal Rule of Civil Procedure 12(d).........................................2, 17, 38

Federal Rule of Civil Procedure 56 ...............................................17, 38

**PRELIMINARY STATEMENT**

Plaintiff-Appellant, Karina Sigalovskaya ("Plaintiff" or "Appellant"), respectfully appeals from the decision of the Honorable LaShann DeArcy Hall, entered on September 29, 2023, which granted the motion of Defendants Special Agents Abigail Braden, Luann Walter, Megan Buckley, and Robert Mancene (collectively, "Defendants" or "Appellees"), for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, and dismissed Plaintiff's Fourth Amendment claims under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics ("Bivens"), based on the Supreme Court's decision in Egbert v. Boule, 142 S. Ct. 1793 (2022) ("Egbert").

\*     \*     \*     \*

1

## JURISDICTIONAL STATEMENT

1.    Jurisdiction existed in the District Court (Hon. LaShann DeArcy Hall), because the action involved constitutional claims brought pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

2.    This Court has jurisdiction because Plaintiff-Appellant appeals from a final judgment of the District Court, entered on September 29, 2023.   Plaintiff-Appellant filed a timely Notice of Appeal on October 27, 2023.

3.    Plaintiff-Appellant appeals from the judgment which granted Defendants-Appellees' motions pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings.   The judgment she appeals from was entered subsequent to the Opinion and Order of the District Court, dated September 29, 2023.

*    *    *    *

## QUESTIONS PRESENTED

1.     Whether the District Court erred in concluding that Plaintiff's false arrest claim presents a new context under <u>Bivens</u>, when the Supreme Court in <u>Egbert</u> did not analyze the "new context" question at all, since this issue had been conceded by the Ninth Circuit, and Plaintiff's Fourth Amendment claims largely mirror the search-and-seizure allegations found in the original <u>Bivens</u> case?

2.     Whether the District Court erred in concluding that "special factors" militate against allowing Plaintiff's false arrest and malicious prosecution <u>Bivens</u> claims to proceed, where the officers involved were performing routine law enforcement functions, no national security concerns were implicated, no remedial process exists to address these constitutional violations and the federal judiciary has a long history of jurisprudence adjudicating fabricated evidence claims?

\*     \*     \*     \*

3

## STATEMENT OF FACTS[1]

**Defendants Forcefully Enter Plaintiff's Apartment and Conduct a Warrantless Search.**

On February 11, 2013, at approximately 8:30 p.m., Plaintiff Karina Sigalovskaya was lawfully present at her residence located at 2475 West 16th Street, Apartment 16-J, Brooklyn, N.Y. 11214. (JA-43).    At the aforesaid time and place, defendant Special Agents proceeded to pound on plaintiff Karina Sigalovskaya's door and yell "police." (JA-44). Plaintiff Karina Sigalovskaya immediately answered the door. (Id.). Thereafter, Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene proceeded to force their way past plaintiff Karina Sigalovskaya into her apartment, without obtaining her consent to enter the premises. (Id.).

Defendants Special Agent Luann Walter, Special Agent Megan Buckley, And Special Agent Robert Mancene immediately separated plaintiff Karina Sigalovskaya from her two children, Nathan Ifraimov, age eleven (11), and Jenna Ifraimov, age five (5). (Id.) Thereafter, Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene began frantically searching the apartment, yelling "where is your husband?!" (Id.) Defendants Special

---

[1]Since this appeal arises from the District Court's ruling on Defendants' Rule 12(c) motion, Plaintiff relies exclusively on the facts alleged in her Amended Complaint (the "complaint") for the facts cited herein.

4

Agent Luann Walter, Special Agent Megan Buckley, And Special Agent Robert Mancene were looking for plaintiff's common law husband, Evidal Ifraimov, whom they intended to arrest. (Id.).

**Defendants Fail to Procure an Arrest Warrant for Plaintiff, having Failed to Uncover Any Evidence Against Her During their 8 Month Investigation.**

Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene did not have an arrest warrant for Plaintiff Karina Sigalovskaya. (Id.) (§16). Defendants had not attempted to obtain an arrest warrant for plaintiff Karina Sigalovskaya prior to entering her residence on February 11, 2013. (JA-44-45). The reason why Defendants had not attempted to procure an arrest warrant for Ms. Sigalovskaya was because they had no evidence that she had engaged in any criminal activity. (JA-45).

During the course of Defendants' eight-month investigation into Evidal Ifraimov for possession of child pornography, the only evidence that Defendants had uncovered was against Mr. Ifraimov -- and Mr. Ifraimov alone -- and not against plaintiff Karina Sigalovskaya. (Id.). Specifically, Defendants had not uncovered any evidence that plaintiff Karina Sigalovskaya was in possession of child pornography, or had engaged in any unlawful acts towards any children. (Id.) Further, Defendants had not uncovered any evidence that plaintiff Karina Sigalovskaya was even aware that her husband had an interest in child pornography. (Id.) In fact, Mr.

5

Ifraimov had gone to great lengths to conceal his interest in child pornography from plaintiff Karina Sigalovskaya, secretly engaging in such activities only when Ms. Sigalovskaya was outside of the apartment -- either at work, visiting her parents, or shopping -- and as a result, she had no idea that Mr. Ifraimov had engaged in such unlawful behavior. (Id.)

**Defendants Unlawfully Search Plaintiff's Apartment, and Refuse to Leave Despite Plaintiff's Express Directive to Do So.**

At the time when defendant Special Agents entered the apartment on February 11, 2013, Defendants knew that they had no evidence against plaintiff Karina Sigalovskaya. (JA-42). When plaintiff Karina Sigalovskaya informed defendant Special Agents that her common-law husband, Evidal Ifraimov, was not home, Defendants began to unlawfully search plaintiff Karina Sigalovskaya's apartment. (Id.). While Defendants were conducting this unlawful search, Evidal Ifraimov called plaintiff Karina Sigalovskaya's residence. Upon learning who was calling, defendant Special Agents then demanded that plaintiff answer on a speakerphone and speak to him in English. (JA-46). Plaintiff Karina Sigalovskaya immediately complied with Defendants' request. (Id.)

During the telephone conversation Mr. Ifraimov informed defendant Special Agents over speakerphone that he would return to the apartment "in twenty minutes." (Id.). Thereafter, Anthony J. Colleluori, Esq., an attorney who had been

retained by Mr. Ifraimov, called the Sigalovskaya residence and told plaintiff Karina Sigalovskaya to repeat, out loud, the following phrase to the agents: "LEAVE MY HOUSE NOW, YOU ARE TRESPASSING." (Id.). Plaintiff Karina Sigalovskaya did as she was told and repeated verbatim the words that Mr. Collelouri had instructed her to say. Notwithstanding this directive, however, defendant Special Agents did not leave plaintiff's residence. (JA-42).

**Defendant Braden Returns to the Room Where Plaintiff is being Unlawfully Detained, and Demands that Plaintiff Write out a Statement.**

Rather, Defendant Special Agents left the room for approximately ten minutes to confer amongst themselves. (Id.). Thereafter, Defendant Special Agent Abigail P. Braden ("SA Braden") returned to the room where plaintiff Karina Sigalovskaya was being unlawfully held by Defendants and demanded that plaintiff write out a statement. (Id.). Plaintiff Karina Sigalovskaya requested an explanation as to why she needed to write out a statement, but SA Braden refused to provide her with such an explanation. (Id.).

At this point, Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene began lobbing accusations at plaintiff, accusing her of "helping a grown man touch a girl inappropriately." (JA-47). Plaintiff Karina Sigalovskaya was shocked and appalled by this false accusation. (Id.). At no point in her life had plaintiff Karina Sigalovskaya ever helped Mr.

7

Ifraimov, or any other "grown man," touch any child in an inappropriate manner. (<u>Id</u>.). SA Braden then claimed she had proof of Mr. Ifraimov's unlawful activities with children, and that she could show it to Ms. Sigalovskaya. (<u>Id</u>.) However, when plaintiff Karina Sigalovskaya asked SA Braden to show her such proof, SA Braden refused to do so. (JA-42).

**Defendants Show Plaintiff Two Redacted, Non-Pornographic Photos of Her Daughter, which Plaintiff Readily Identifies.**

Instead, defendant SA Braden showed plaintiff Karina Sigalovskaya two redacted and non-pornographic photographs on a cell phone. (<u>Id</u>.). The redacted photos were of Jenna Ifraimov, plaintiff Karina Sigalovskaya's five-year-old daughter. (<u>Id</u>.). The redacted photos showed plaintiff's daughter from the waist up, with a long sleeve shirt on. There was nothing in these redacted photos that appeared sexual, inappropriate or in any manner pornographic. (<u>Id</u>.). Plaintiff was then asked whether she recognized the girl in these redacted pictures. (<u>Id</u>.). Plaintiff responded in the affirmative and said yes, she did recognize the girl, it was her daughter Jenna. (<u>Id</u>.). SA Braden then asked whether Plaintiff recognized where the photograph was taken. (JA-48). Plaintiff said that it appeared to have been taken inside one of the rooms of her apartment. (<u>Id</u>.). SA Braden then asked whether plaintiff Karina Sigalovskaya had taken this particular picture. (<u>Id</u>.). Plaintiff told SA Braden that

she had not taken the pictures, and that she rarely, if ever, took pictures of her children inside of her apartment. (Id.).

**Defendants Lie About Plaintiff's Statements Regarding the Photos of Her Daughter, and Falsely Claim that She Made a "Confession."**

Notwithstanding this denial, SA Braden later claimed, falsely, that Plaintiff Karina Sigalovskaya had made a "confession" to her and told her that she was the one who had taken the pornographic pictures of her daughter. (JA-48). Further, SA Braden further claimed, falsely, that Plaintiff Karina Sigalovskaya had told her that her son, Nathan Ifraimov, participated in taking pornographic pictures of her daughter Jenna. (Id.). These were outright fabrications by SA Braden. (Id.).

Apart from SA Braden's lies, Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene made false statements about the facts and circumstances surrounding plaintiff Karina Sigalovskaya's arrest. (Id.). Further, Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene lied about plaintiff Karina Sigalovskaya's alleged incriminating statements that plaintiff had allegedly made in their presence and lied about her alleged inculpatory actions on the night in question. (JA-48-49).

Defendants Special Agent Luann Walter, Special Agent Megan Buckley, and Special Agent Robert Mancene then forwarded these false and misleading

9

statements to the United States Attorney's Office in connection with plaintiff Karina Sigalovskaya's prosecution. (JA-49). Plaintiff Karina Sigalovskaya had never made any of the statements that Defendants had falsely attributed to her. (Id.). Defendants knew that plaintiff had never made such statements to her. (Id.).

**Plaintiff is Formally Arrested and Charged Based on Defendants' False "Confession," Despite the Absence of Any Incriminating Evidence.**

As a result of Defendants' false "evidence," plaintiff Karina Sigalovskaya was arrested and charged with 18 U.S.C. § 2251(a), Sexual Exploitation of Children, and 18 U.S.C. § 2252(a)(4)(B), Certain activities relating to material involving the sexual exploitation of minors. (Id.). There was no physical evidence connecting plaintiff Karina Sigalovskaya with the charged offenses. (Id.). There was no forensic evidence connecting plaintiff a with the charged offenses. (Id.). There was no photographic evidence connecting plaintiff with the charged offenses. (Id.). There was no documentary evidence connecting plaintiff with the charged offenses. (Id.).

Plaintiff Karina Sigalovskaya had never, at any time, employed, used, persuaded, induced, enticed, or coerced her own children, or any other children, for that matter, to engage in any sexually explicit activity for any purpose. (JA-50). Plaintiff had never, at any time, produced any visual depictions involving the use of her own children, or any other children, engaging in sexually explicit conduct. (Id.). Plaintiff had no knowledge whatsoever that her common-law husband, Evidal

10

Ifraimov, had an interest in child pornography or had ever inappropriately touched their daughter. (JA-50).

**Plaintiff is Led Away in Handcuffs in Front of Her Friends and Neighbors, and Thereafter Spends 3 Weeks in a Federal Detention Facility.**

After her arrest, plaintiff Karina Sigalovskaya was brought downstairs in her building, where a crowd had gathered. (Id). Numerous friends and neighbors were present to witness the humiliating spectacle of plaintiff Karina Sigalovskaya being placed under arrest and taken away in handcuffs. (Id.). Thereafter, plaintiff Karina Sigalovskaya was brought to a Federal detention facility in New York County, where she remained all night. (Id.). While at this facility, plaintiff Karina Sigalovskaya was forced, against her will, to give DNA samples to law enforcement officials. (Id.). Thereafter, plaintiff was transported to the United States Courthouse for the Eastern District of New York for her arraignment before the Magistrate Judge Cheryl Pollack. (Id.). Plaintiff was denied bail at her arraignment. (Id.).

Plaintiff Karina Sigalovskaya was held against her will at the Metropolitan Detention Facility ("MDC") in Kings County for approximately three (3) weeks. (Id.). While incarcerated at MDC, plaintiff Karina Sigalovskaya was repeatedly subjected to invasive, full-body strip searches. (JA-51) (§70). While incarcerated at MDC, plaintiff was repeatedly propositioned by other female inmates. (Id.) While incarcerated at MDC, plaintiff Karina Sigalovskaya was exposed to several inmates

11

with communicable diseases. (JA-51). While incarcerated at MDC, plaintiff Karina Sigalovskaya was denied access to proper medical care and treatment that she needed. (<u>Id</u>.).

As a result of her unlawful incarceration, plaintiff was unable to be with her daughter Jenna when she celebrated her sixth birthday. (<u>Id</u>.). As a result of her unlawful incarceration, plaintiff was unable to be present when her son Nathan attended his first acting audition in Orlando, Florida. (<u>Id</u>.).

**Judge Irizarry Dismisses All Charges Against Plaintiff, finding that She "Did Not Have Any Criminal Liability or Responsibility" for her Husband's Acts.**

On March 5, 2013, all charges against plaintiff Karina Sigalovskaya were dismissed on motion by the United States Attorney's Office. (<u>Id</u>.). The charges were dismissed based upon the complete lack of any evidence against plaintiff Karina Sigalovskaya. As Judge Irizarry would later state, during the sentencing hearing of Evidal Ifraimov: "[T]he Government made a determination that the wife the mother was not involved and did not have any criminal liability or responsibility, demonstrated by the fact that the Government dropped the charges and has, to date, not pursued any other kind of investigation or accusation or anything else against the mother." (<u>Id</u>.)

**Plaintiff Continues to Suffer Damages Even After all Charges Are Dismissed.**

Even after all criminal charges were dismissed, plaintiff Karina Sigalovskaya was unable to see or even speak to her children for another three (3) months. (JA-52). Due to the unlawful and perjurious conduct of SA Braden, the New York State Administration for Children Services ("ACS") filed a petition claiming plaintiff Karina Sigalovskaya was unfit as a mother and to permanently revoke her guardianship over her children. (Id.). Plaintiff was forced to retain the services of Steven Kartagener, Esq., in order to defend herself against these baseless charges and get her children back. (Id.). Plaintiff Karina Sigalovskaya paid Mr. Kartagener over $25,000.00 for his legal services. (JA). Despite ACS' petition, after three (3) months of making multiple court appearances, plaintiff was finally awarded custody of her children. (Id.).

Thereafter, plaintiff was forced to make multiple court appearances in Family Court for over one (1) year to fight ACS' petition of neglect. (Id.). While plaintiff Karina Sigalovskaya has regained full custody of her children, she was required to have ACS visit her apartment twice a month. (Id.). Due to the unlawful and perjurious conduct of SA Braden, plaintiff was placed on the New York State Sex Offender Registry. (Id.). As a result of Defendants' unlawful conduct, plaintiff spent approximately three weeks in jail, had her children taken from her for over three months, was required to obtain legal counsel and make multiple court appearances

13

in order to regain custody of her children, suffered severe emotional distress, humiliation, deprivation of her liberty, and violation of her constitutional rights. (JA-52-53).

\*     \*     \*     \*

## PROCEDURAL HISTORY

At the close of discovery in this matter, Defendants moved for summary judgment. The District Court denied Defendants' motion on Plaintiff's false arrest claims, malicious prosecution, and failure to intervene claims, allowing such claims to proceed against Defendants Braden (false arrest and malicious prosecution) and Mancene (false arrest and failure to intercede). (JA-150-166). In so holding, the District Court expressly stated that a <u>Bivens</u> remedy was available to Plaintiff for her false arrest and malicious prosecution claims. (JA-158) ("Defendants do not argue—nor could they do so credibly—that a <u>Bivens</u> remedy is unavailable for Plaintiff's claims for false arrest and malicious prosecution."). Thereafter, a trial date was set, but the trial was adjourned *sine die* because of the pandemic. A new trial date was set for October 11, 2022.

On June 8, 2022, the Supreme Court issued its decision in <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022). The parties subsequently briefed the issue of whether, under <u>Egbert</u>, Plaintiff's claims presented a "new context" under <u>Bivens</u>, and if so, whether any "special factors" counseled against allowing Plaintiff's <u>Bivens</u> claims to proceed to trial. On October 5, 2022, the District Court heard oral argument on this issue. On September 29, 2023, the District Court issued its Memorandum and Order dismissing Plaintiff's false arrest, malicious prosecution and failure to intervene

15

claims under <u>Bivens</u>, finding that all such claims were barred under the Supreme Court's decision in <u>Egbert</u>. (JA-221-236). This appeal now follows.[2]

\*     \*     \*     \*

---

[2] Plaintiff appeals the District Court's dismissal of her false arrest and malicious prosecution claims, but not her failure to intervene claim.

## **STANDARD OF REVIEW**

This Court "review[s] a district court's dismissal pursuant to Fed. R. Civ. P. 12(c) *de novo*, employing the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (internal quotation marks and alteration omitted). Whether evaluating a defendant's motion for judgment on the pleadings pursuant to Rule 12(c) or a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the amended complaint as true and draw all reasonable inferences in favor of the plaintiff. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015). To survive either motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." WC Capital Mgmt., LLC v. UBS Secs., LLC, 711 F.3d 322, 328 (2d Cir. 2013) (quoting Johnson, 569 F.3d at 44).

If a movant under Rule 12(c) presents evidence outside the non-movant's pleadings, Federal Rule of Civil Procedure 12(d) "presents district courts with only two options: (1) 'the court may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Palin v. New York Times Co., 940 F.3d 804, 810-11 (2d Cir.

2019) (quoting <u>Kopec v. Coughlin</u>, 922 F.2d 152, 154 (2d Cir. 1991) (citations and internal quotation marks omitted)).

\*       \*       \*       \*

## SUMMARY OF ARGUMENT

The District Court erred in finding that plaintiff's false arrest claim, a routine search-and-seizure, was barred by the Supreme Court's decision in <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022). <u>Egbert</u> did not alter the law on what constitutes a "new context" under <u>Bivens</u>. In fact, the Supreme Court did not analyze this issue at all, as the Ninth Circuit conceded that Boule's Fourth Amendment claim presented a new context under <u>Bivens</u>. Instead, the Court proceeded straight to the "special factors" analysis. Thus, <u>Egbert</u> poses no bar to Plaintiff's false arrest claim. To the extent that the District Court held otherwise, it announced a new rule that is nowhere in <u>Egbert</u> itself. The Supreme Court did not hold that any difference in the federal agency is now sufficient to create a new context. To the contrary, the Court never proclaimed any rule relating to "new context." Rather, it devoted its entire analysis to the "special factors" component. Since Plaintiff's Fourth Amendment claims mirror those in the original <u>Bivens</u> case, and since <u>Egbert</u> did not change the law on what constitutes a "new context," Plaintiff's false arrest claim should be reinstated.

Even assuming, <u>arguendo</u>, that plaintiff's false arrest claim presents a new context, there are no "special factors" counseling against a <u>Bivens</u> remedy. <u>Egbert</u> is limited to Border Patrol's activities at the border that raise national security concerns. There are no such concerns here. This was a routine search-and-seizure inside of a New York City apartment. The search was performed by domestic law

19

enforcement agents far removed from the border.  Thus, the national security issues identified in <u>Egbert,</u> as well in other recent Supreme Court precedents, are simply not relevant here. Moreover, there is no remedial process in place to address the constitutional violations at issue. The myriad of boilerplate statutes identified by Defendants have no application to this case.  On their face, these statutes apply to "immigration officers," not HSI agents. But even if they applied to HSI agents, they are boilerplate in nature and create no remedial process. Lastly, federal courts are uniquely qualified to constitutional violations by law enforcement officials, as this Court has repeatedly done. In sum, there are no "special factors" which counsel against allowing Plaintiff's Fourth Amendment claims to proceed. Plaintiff's false arrest and malicious prosecution claims should be reinstated, and this matter should be remanded to the District Court for a trial on these claims.

*     *     *     *

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S FALSE ARREST CLAIM UNDER BIVENS.

### A. The Supreme Court in <u>Egbert</u> Did Not Alter What Constitutes a "New Context" Under Bivens.

The District Court erred in concluding that the Plaintiff's false arrest claim presented a "new context" under <u>Egbert v. Boule</u>, 142 S. Ct. 1793 (2022). This is so because "<u>Egbert</u> was not a case about the context inquiry (step one of the <u>Bivens</u> analysis); instead, it was a case about the special factors inquiry (step two of the <u>Bivens</u> analysis)." <u>Kidd v. Mayorkas</u>, 645 F. Supp. 3d 961, 969 (C.D. Cal. 2022). The Supreme Court devoted no substantive analysis to the "new context" question in <u>Egbert</u>. Rather, the Court "noted only briefly that the Ninth Circuit conceded Boule's case presented a new <u>Bivens</u> context; it then proceeded straight to the special factors analysis." (<u>Id</u>.), (citing <u>Egbert</u>, 142 S. Ct. at 1804). Accordingly, the Supreme Court's decision in <u>Egbert</u> did not alter the law on what constitutes a "new context" under <u>Bivens.</u>

A closer examination of <u>Egbert</u> confirms this conclusion. In <u>Egbert</u>, the owner of an inn adjacent to the border with Canada brought a <u>Bivens</u> action against a Border Patrol agent, alleging that the agent used excessive force in violation of the Fourth Amendment, and retaliated against him in violation of the First Amendment,

21

during an investigation into international drug smuggling. The Court began by noting its longstanding reluctance to imply new causes of action under <u>Bivens</u>. <u>Egbert</u>, 142 S. Ct. at 1802-03. This portion of the Court's opinion relied exclusively on its pre-existing case law. <u>Id</u>. It therefore broke no new ground.

The Supreme Court then summarized its well-established framework governing <u>Bivens</u> actions. "[O]ur cases have framed the inquiry as proceeding in two steps": (1) whether the claim arises in a "new context"; and (2) if so, whether "special factors indicate[] that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." <u>Id</u>. at 1803 (quoting <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857-58 (2017)). These steps "often," but not always, "resolve[] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." <u>Id</u>.

The Supreme Court then proceeded to apply this framework to Mr. Boule's Fourth Amendment claim. With respect to the "new context" step, the Court observed that the Ninth Circuit had conceded that Mr. Boule's claims presented a new context. <u>Id</u>. at 1804. The Court accepted this conclusion without any analysis. <u>Id</u>. In fact, the only discussion of the "new context" step in <u>Egbert</u> appears in a single paragraph that exclusively relies on quotations and holdings from prior Supreme Court precedents. <u>Id</u>. (quoting <u>Abbasi</u>, 137 S. Ct. at 1876 (2017), then <u>Hernández v.</u>

22

Mesa, 140 S. Ct. 735 (2020), and then Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001)).

The Supreme Court then concluded that "special factors" counseled against applying Bivens to this new context. First, the Court found that enforcement of the international border by Border Patrol implicated national security concerns. Id. at 1805. The Ninth Circuit erred, the Court found, by applying the "the special factors analysis at too granular a level," rather than analyzing the "national-security risk" of applying Bivens to border enforcement more generally. Id. 1805-06. The Court repeatedly emphasized the national security risks at issue in cross-border enforcement. Id. at 1805 ("national security is at issue"); id. ("this national-security context"). Second, the Court found that Mr. Boule had alternative remedies that also counseled hesitation in recognizing a Bivens remedy in this context. Specifically, Border Patrol had conducted "a year-long internal investigation into Agent Egbert's conduct" after Mr. Boule filed a grievance. The grievance and investigation process "secured adequate deterrence and afforded Boule an alternative remedy." Id. at 1807. The Court ultimately concluded that these special factors -- the national security concerns of border enforcement and the existence of alternative remedies -- foreclosed Mr. Boule's Fourth Amendment claim under Bivens.

As the foregoing confirms, the Supreme Court was not called upon to decide -- nor did it -- whether Boule's claims presented a "new context" under Bivens.

23

That is to say, the same factors which governed this analysis before <u>Egbert</u> continue to do so after <u>Egbert</u>. Among other things, courts must consider "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." <u>Abbasi</u>, 137 S. Ct. at 1860.

Here, the District Court held that Plaintiff's false arrest claim constituted a "new context" because "the difference in agency is now sufficient, after <u>Boule</u>, to create a new context." (JA-221). In the court's view, "any difference between the category of Defendants in <u>Bivens</u> and the case before the court, regardless of how trivial, presents a new context." (<u>Id</u>.) (citing <u>Egbert</u> at 1804). Yet this new "rule" is nowhere to be found in <u>Egbert</u> itself. As noted above, the Supreme Court simply accepted, without analysis, the Ninth Circuit's conclusion that Boule's claims presented a "new context" under Bivens. It then proceeded straight to the special factors analysis. <u>Egbert</u>, 142 S. Ct., at 1804. Simply put, *"*<u>Egbert</u> *did not change the law regarding what constitutes a new Bivens context.*" <u>Kidd</u>, 645 F. Supp. 3d at 970.

24

Moreover, the District Court's interpretation of what constitutes a "new category of Defendants" goes beyond the Supreme Court's intended use of this term. As one federal court noted, in rejecting a similar argument under <u>Egbert</u>:

> Although Osmanski is correct that an entirely "new category of Defendants" arises in a new context, he neglects to mention that such language originated in <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 68, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001), in which the Supreme Court declined to apply <u>Bivens</u> to a private prison defendant because corporations are a "new category of Defendants." <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1857 (citing 534 U.S. at 68). FBI agents are not a "new category of Defendants."

<u>Kennedy v. Massachusetts</u>, 643 F. Supp. 3d 253, 258 (D. Mass. 2022)

Other courts have rejected "new context" arguments where the federal officer works for an agency other than that found in <u>Bivens</u>. <u>See, e.g.</u>, <u>Hicks v. Ferreyra</u>, 965 F. 3d 302, 311 (4th Cir. 2020) (U.S. Park Police); <u>Jacobs v. Alam</u>, 915 F. 3d 1028, 1038 (6th Cir. 2019) (U.S. Marshal Service); <u>Joane v. Hodges</u>, 939 F. 3d 945, 952 (9th Cir. 2018) (IRS). Thus, the fact that the Defendants herein "are not agents of the Federal Bureau of Narcotics, but instead are HSI special agents" (JA-231), does not create a "meaningful" difference between the Fourth Amendment violations at issue here and those involved in <u>Bivens</u>. <u>Abbasi</u>, 137 S. Ct. at 1859-1860.

In concluding otherwise, the District Court appears to have relied heavily on the dissenting opinion of Justice Sotomayor, which is cited repeatedly in the court's

opinion. See, e.g. JA-225 n.3, 226, 229, 231. However, it is axiomatic that "lower courts are bound by the majority decision, not by the opinions expressed in dissenting opinions." Bracci v. Becker, No. 1:11-cv-1473, 2013 U.S. Dist. LEXIS 3224, at *12 n.3 (N.D.N.Y. Jan. 9, 2013) (citing United States v. Brooks, No. 06-CR-550, 2009 U.S. Dist. LEXIS 99997, 2009 WL 3644122, *12 (E.D.N.Y. Oct. 27, 2009) (citations omitted)); City of Oneida, N.Y. v. Salazar, No. 08-CV-0648, 2009 U.S. Dist. LEXIS 85960, 2009 WL 3055274, *2 (N.D.N.Y. Sept. 21, 2009). Thus, "the mere existence of a convincing dissent in a closely divided Court cannot alter [the] binding force" of the majority's opinion. Taber v. Maine, 67 F.3d 1029, 1044 (2d Cir. 1995). Simply put, Justice Sotomayor's interpretation of the majority's opinion in Egbert cannot substitute for what is in the opinion itself. And that opinion is silent on the contours of what constitutes a "new context" under Bivens.

Moreover, the District Court's interpretation of what constitutes a "new context" under Egbert would essentially preclude Fourth Amendment search-and-seizure claims under Bivens altogether. Taken to its logical conclusion, the District Court's holding -- that "the difference in agency is now sufficient, after Boule, to create a new context" (JA-231) -- would mean that a Bivens search-and-seizure claim could *never* be brought, since there are no longer any federal agents who work for the defunct "Federal Bureau of Narcotics." (Id.). But the Supreme Court has never gone this far. See Abbasi, 137 S. Ct. at 1856 ("[T]his opinion is not intended

26

to cast doubt on the continued force, or even the necessity, of <u>Bivens</u> in the search-and-seizure context in which it arose."); <u>Egbert</u>, 142 S. Ct. 1793, 1803 (declining to "dispense with <u>Bivens</u> altogether"). In the absence of an explicit statement by the Supreme Court to the contrary, <u>Bivens</u> remains good law and must be followed. <u>See</u> <u>Engel v. Buchan</u>, 710 F. 3d 698, 708 (7th Cir. 2013) ("<u>Bivens</u> remains the law, and we are not free to ignore it"); <u>Doe v. United States</u>, 381 F.Supp.3d 573, 615 (M.D.N.C. 2019) ("If the Supreme Court wanted to overrule its earlier precedent in <u>Abbasi</u>, it would have done so explicitly."). Since "Egbert did not change the law regarding what constitutes a new <u>Bivens</u> context," <u>Kidd</u>, 645 F. Supp. 3d at 970, the District Court's conclusion that a "difference in agency," by itself, establishes a new context under <u>Egbert</u> is flawed and must be rejected.

### B. Plaintiff's Complaint Alleges a Routine Fourth Amendment Claim that Falls Squarely within <u>Bivens</u>.

The District Court acknowledged that "Plaintiff's false arrest claim has parallels to <u>Bivens</u>," and that "the agents in <u>Bivens</u> and Defendants are similar in that they are both enforcing traditional criminal law." (JA-230, 231). Nonetheless, the Court concluded that Plaintiff's false arrest claim presented a "new context" under <u>Bivens</u>, since, apart from the fact that Defendants were "are not agents of the Federal Bureau of Narcotics" (<u>id</u>.), the "focus of Plaintiff's complaint is the fabrication of evidence that led to her arrest and prolonged detention, not an illegal

entry into her home during which agents searched." (Id.). However, the District Court's reading of the complaint was unduly restrictive. Throughout her complaint, Plaintiff repeatedly alleged that Defendants violated her Fourth Amendment rights by conducting an unlawful search-and-seizure inside of her apartment.

Specifically, Plaintiff alleged, among other things, that: i) Defendants "proceeded to force their way past [plaintiff] into her apartment, without obtaining her consent to enter the premises"; ii) Defendants "did not have an arrest warrant for [Plaintiff]"; iii) Defendants "had not attempted to obtain an arrest warrant for plaintiff [] prior to entering her apartment"; iv) "At the time when Defendant Special Agents entered the apartment on February 11, 2013, Defendants *knew* that they had no evidence against Plaintiff" (original emphasis); v) "When plaintiff [] informed defendant Special Agents that her common-law husband, Evidal Ifraimov, was not home, Defendants began to unlawfully search [her] apartment;" and vi) On the advice of counsel, Plaintiff instructed Defendants to "LEAVE MY HOUSE NOW, YOU ARE TRESSPASSING" (original emphasis), but Defendants refused to do so. (JA-44-46).

These allegations fall squarely within Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), which likewise "concerned an allegedly unconstitutional arrest and search carried out in New York City." Powell, 2020 U.S. Dist. LEXIS 157801, at *16. In Bivens,

28

the Supreme Court held that the petitioner had a right of action against federal officers who had conducted a warrantless search and arrested him in his home in violation of the Fourth Amendment. See Bivens, 403 U.S. at 397.[3] "Because [Plaintiff's] claims assert the same constitutional right that formed the basis of Bivens, that fact "weighs heavily in favor of finding that [Plaintiff's] claims arise in the Bivens context, rather than in a 'new' context."" Prado v. Perez, 451 F. Supp. 3d 306, 315 (quoting Lehal v. Cent. Falls Det. Facility Corp., No. 13 Civ. 3923, 2019 U.S. Dist. LEXIS 49477, 2019 WL 1447261, at *11 (S.D.N.Y. Mar. 15, 2019)).

Plaintiff's allegations here are on all fours with Bivens. Both cases involve a warrantless entry. Both cases involve a warrantless search inside of Plaintiff's apartment. And both cases involve a warrantless arrest inside of Plaintiff's residence. In short, "the similarity of Bivens and this dispute is readily apparent." Powell, 2020 U.S. Dist. LEXIS 157801, *16. Since Plaintiff's Fourth Amendment claims mirror with those in Bivens, such claims do not present a new context. See Diaz v. Mercurio, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) (holding that Plaintiff's Fourth Amendment claims amounted to "a run-of-the-mill challenge to a standard law

---

[3] In the following decade, the Supreme Court extended the cause of action first articulated in Bivens to: (1) a Fifth Amendment due process claim for sex discrimination, Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979), and (2) an Eighth Amendment deliberate indifference claim for failure to provide proper medical attention, Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980). Along with Bivens itself, those three contexts are the sole causes of action recognized by the Supreme Court today under Bivens. Egbert, 142 S. Ct. at 1802.

enforcement operation" that did "not present a context meaningfully different from <u>Bivens</u>"); <u>Powell</u>, 2020 U.S. Dist. LEXIS 157801 at *16 (holding that Plaintiff's claim that "he was unconstitutionally arrested, in his New York City home, by federal officers after the officers conducted an extralegal, warrantless search of the Building's third floor, in violation of his Fourth Amendment rights" did not present a new <u>Bivens</u> context). <u>See also</u> <u>Abassi</u>, 137 S. Ct. at 1865 (noting "trivial" differences do not "suffice to create a new Bivens context"). Since "[Plaintiff's] false arrest claim is squarely within the context faced in <u>Bivens</u>," it does not present a meaningfully different new context. <u>Powell</u>, 2020 U.S. Dist. LEXIS 157801 at *17-18.

In reaching a contrary conclusion, the District Court appears to have placed undue emphasis on Plaintiff's false confession claim. While Plaintiff alleged that Defendants fabricated a confession against her (JA-48), the fabricated confession was part of the *res gestae* of the entire incident. That is to say, *prior* to falsifying the confession against Plaintiff, Defendants had unlawfully entered her apartment, had unlawfully searched her apartment, had unlawfully separated Plaintiff from her children, had unlawfully detained her in a separate room, and had unlawfully refused to leave the premises, even after being told by Plaintiff to "LEAVE MY HOUSE NOW, YOU ARE TRESSPASSING." (JA-43-46). These events, which were incorporated by reference into Plaintiff's false arrest claim (JA-54), clearly establish

an unlawful search-and-seizure. For this reason, Plaintiffs' claims arose "in the same context as that of <u>Bivens</u> itself: federal agents conducting an unreasonable search of someone's residence without a search warrant." <u>Kennedy</u>, 643 F. Supp. 3d at 259. Accordingly, Plaintiff's claims do not present a new <u>Bivens</u> context.

To the extent that the District Court ruled otherwise, it disregarded Plaintiff's extensive search-and-seizure allegations. (JA-43-46). Yet such allegations are inextricably intertwined with Plaintiff's allegations of a false confession. They cannot be artificially parsed out, *ex post facto*, to limit the scope of Plaintiff's false arrest claim. On a Rule 12(c) motion, the Court was required to accept all of Plaintiff's factual allegations as true, and to draw all reasonable inferences in her favor. <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 429 (2d Cir. 2011). This the District Court failed to do. In focusing solely on the false confession, and ignoring the extensive search-and-seizure allegations, the District Court construed Plaintiff's complaint in a manner that deprived her of the favorable inferences that she was entitled on a Rule 12(c) motion. (<u>Id</u>). This was error and should be reversed.

## II. THERE ARE NO "SPECIAL FACTORS" WHICH COUNSEL AGAINST ALLOWING PLAINTIFF'S <u>BIVENS</u> CLAIMS TO PROCEED.

### A. There are No Border or National Security Concerns Raised by Plaintiff's Claims.

As demonstrated above, Plaintiff's claims do not present a new <u>Bivens</u> context, and her claims should therefore have been allowed to proceed to trial.[4] But even assuming, <u>arguendo</u>, that Plaintiff's Fourth Amendment claim presents a new <u>Bivens</u> context, there are no "special factors" that would indicate that federal courts are "less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." <u>Egbert</u> at 1803 (quoting <u>Abbasi</u>, 137 S. Ct. at 1857-58).

In <u>Egbert</u>, the Supreme Court identified two central reasons why a <u>Bivens</u> action should not be recognized: (1) "Congress is better positioned to create remedies in the border-security context," and (2) "the Government has already provided alternative remedies that protect plaintiffs like Boule." <u>Id</u>. at 1804. With respect to the first reason, the Court expressed concerns regarding the "potential" for "harmful

---

[4] The matter was scheduled to go to trial on October 11, 2022. The District Court had denied summary judgment on Plaintiff's false arrest and malicious prosecution claims, rejecting any suggestion that a <u>Bivens</u> remedy would be unavailable for Plaintiff's Fourth Amendment claims. (JA-158) ("Defendants do not argue—nor could they do so credibly—that a <u>Bivens</u> remedy is unavailable for Plaintiff's claims for false arrest and malicious prosecution").

or inappropriate" consequences of "judicial intrusion" into the field of border security. Id. at 1805. It is thus clear that border security was the predominant "special factor" that the Supreme Court considered in rejecting Boule's Bivens claim.

The Court raised similar national security concerns in Hernandez v. Mesa, 140 S. Ct. 735 (2020). In that case, the Court denied a Bivens remedy based on "the distinctive characteristics" of that case: the suit was brought by Mexican nationals over a cross-border shooting by a border patrol agent who was "stationed right at the border" and actively "attempting to prevent illegal entry" into the United States. Id., 140 S. Ct. at 740, 746. Critical to the Court's reasoning was "the potential effect on foreign relations." Id. at 744. The bullet had struck the victim on Mexican soil and became "an international incident, with the United States and Mexico disagreeing about how the matter should be handled." Id. at 740. The Executive Branch had concluded that the agent acted consistently with the "'policy or training regarding use of force'" and thus should not face charges anywhere, while the Government of Mexico supported the Bivens suit and requested the agent's extradition for prosecution in Mexico. Id. at 744-745. The Supreme Court rejected Plaintiff's Bivens claim because "regulating the conduct of agents at the border unquestionably has national security implications," and the "risk of undermining border security provides reason to hesitate before extending Bivens into this field." Id. at 747.

33

Likewise, in Abbasi, the Supreme Court disallowed foreign nationals' "Bivens claims challenging the conditions of confinement imposed ... pursuant to the formal policy adopted by the Executive Officials in the wake of the September 11 attacks," because they would "interfere in an intrusive way with sensitive functions of the Executive Branch." 137 S. Ct. at 1858, 1861. In particular, the Court noted that a Bivens claim in that context "would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to" the national security policies in question. (Id. at 1860). However, "[n]ational-security policy [] is the prerogative of Congress and the President, and courts are "reluctant to intrude upon" that authority absent congressional authorization." (Id. at 1861), quoting Department of Navy v. Egan, 484 U. S. 518, 530, 108 S. Ct. 818, 98 L. Ed. 2d 918.

When taken together, Egbert, Hernandez and Abassi stand for the proposition that a Bivens claim will not lie where "national security is at issue." Id. at 1805. Under such circumstances, it is for Congress and/or the Executive Branch to determine federal policies, not the Judiciary. But such national security concerns are simply not present here. Plaintiff has alleged "a run-of-the-mill challenge to a standard law enforcement operation," Diaz, 442 F. Supp. 3d at 708, "concern[ing] an allegedly unconstitutional arrest and search carried out in New York City." Hernández, 140 S. Ct. at 744 (citing Bivens, 403 U.S. at 389). Moreover,

34

"Defendants appear to have been investigating traditional criminal law domestically," not internationally, as the lower court acknowledged. (JA-234). Accordingly, the "special factors" identified by the Court in Egbert, Hernandez and Abassi have no application to this case.

To the extent that the District Court found otherwise, it appears to have read Egbert more expansively than the Supreme Court intended. As one federal court observed, "this Court does not read Egbert as constituting a "sea change" in Bivens jurisprudence." Kidd, 645 F. Supp. 3d at 968. "Rather than fundamentally altering Bivens jurisprudence, Egbert appears to provide courts with two special factors to consider in determining whether to hesitate to recognize a Bivens cause of action." (Id. at 969). The first is that "courts are 'plainly' not 'competent to authorize a damages action . . . against Border Patrol agents generally ...'" (Id.) quoting Egbert, 142 S. Ct. at 1806. The second is that Egbert "may have expanded the sort of alternative remedies whose availability forecloses Bivens relief." Kidd, 645 F. Supp. 3d at 969. Thus, "to the extent Egbert changed the law of Bivens, it did so only with respect to part two of the Bivens inquiry, the special-factors analysis." Id, 645 F. Supp. 3d at 970.

Indeed, multiple federal courts have held that Egbert's holding is limited to border-related functions, and does not apply to domestic Fourth Amendment claims. See e.g., Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 569 n.2

35

(7th Cir. 2022) (<u>Egbert</u> foreclosed Bivens for "border-related functions," but does not affect "Bivens' continued force in its domestic Fourth Amendment context"); <u>Salamone v. United States</u>, 618 F. Supp. 3d 146, 154 (S.D.N.Y. 2022) ("The Court's [Egbert] opinion therefore makes clear that a <u>Bivens</u> action is not available against a CBP officer acting within the scope of the officer's duties at the border"); <u>Gilson v. Alvarez</u>, 2022 U.S. Dist. LEXIS 115651, *10 (W.D. Tex. June 30, 2022) (finding <u>Bivens</u> action against Border Patrol officer unavailable under <u>Egbert</u>, as the claims "arise from an incident outside of a border patrol station, not a private home"); <u>Kennedy</u>, 643 F. Supp. 3d at 258 ("The Supreme Court held that <u>Egbert</u> arose in a new national security context because the incident occurred close to the Canadian border and involved a Customs and Border Patrol agent."). Since Plaintiff's Fourth Amendment claims do not implicate a "national-security" policies, <u>Abassi</u>, 137 S. Ct. at 1858, Plaintiff's <u>Bivens</u> claims should not have been dismissed.

## B. There are No Remedial Structures That Would Provide a Remedy for Defendants' Constitutional Violations.

### i. By its Express Terms, 8 C.F.R. § 287.10 Applies to "Immigration Officers," Not HSI Agents.

The District Court found that 8 C.F.R. § 287.10 provided an alternative remedy to Plaintiff that foreclosed her <u>Bivens</u> claims. However, this regulation applies to "immigration officers," not to HSI agents. This much is clear by examining 8 C.F.R. § 287.8, which is incorporated by reference into 8 C.F.R. §

36

287.10, and states that "the standards for enforcement activities contained in this section must be adhered to by every *immigration officer* involved in enforcement activities." (emphasis supplied). The section then goes on to say that a "violation of this section shall be reported to the Office of the Inspector General or such other entity as may be provided for in 8 CFR § 287.10."

The titles and subtitles of this Chapter further confirm that it applies to "immigration officers," not HSI agents. For example, the main heading is "Aliens and Nationality." The subheading states "Subchapter B – Immigration Regulations." It then repeatedly uses the term "immigration officer" when prescribing the use and limitations of "non-deadly force" and "deadly force." By its express terms, then, this statute is intended to apply to immigration officials, not HSI agents investigating child pornography.

Notwithstanding the statute's repeated use of the term "immigration officers" the District Court agreed with Defendants that 8 C.F.R. § 287.10 applied to HSI agents as well. The District Court appears to have reached this conclusion by relying upon evidence outside of the complaint, since it noted that Defendants had "provided a declaration establishing that such regulation is applicable to HSI special agents as well as border patrol." (JA-232-233).[5] It is axiomatic, however, that if a

_____

[5]Plaintiff-Appellant is unable to find the Declaration identified by the District Court in its opinion. It is thus unclear what declaration the District Court relied upon to conclude that the subject

movant under Rule 12(c) presents evidence outside the non-movant's pleadings, Federal Rule of Civil Procedure 12(d) "presents district courts with only two options: (1) 'the court may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Palin v. New York Times Co., 940 F.3d 804, 810-11 (2d Cir. 2019) (quoting Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (citations and internal quotation marks omitted)).   Neither of these options was exercised.   It was therefore error for the District Court to consider Defendant's declaration (JA-232-233) in deciding their Rule 12(c) motion.

### ii. None of the Other Alternative Remedies Has Any Application to this Case.

In the proceedings below, Defendants offered a hodgepodge of "alternative remedies" that allegedly foreclosed Plaintiff's Bivens claims. For example, Defendants argued that the existence of the FTCA, by itself, was an adequate remedy. However, this argument has been repeatedly rejected by federal courts. See, e.g. Linlor v. Polson, 263 F. Supp. 3d 613, 621 (E.D. Va. 2017) ("[T]he Supreme Court has squarely held that the FTCA does not provide an alternative remedial process bearing on the availability of a Bivens remedy") (citing Corr. Servs. Corp.

_____

regulation is "applicable to HSI special agents as well as border patrol."

v. Malesko, 534 U.S. 61 (2001)); Diaz, 442 F. Supp. 3d at 710 ("It has been repeatedly emphasized that an FTCA claim is simply not a substitute for a Bivens action…")

Apart from citing the FTCA, Defendants provided the lower court with a sundry list of federal statutes that allegedly provided alternative remedies to Plaintiff. (JA-186-196). However, none of these statutes is applicable to this case. For example, 6 U.S.C. § 113(b) merely states that "there shall be in the Department an Office of Inspector General and an Inspector General at the head of such office, as provided in chapter 4 of title 5." 6 U.S.C. § (d)(3) merely states that there will be "other officers" who will "assist the Secretary in the performance of the Secretary's functions," including "an Officer for Civil Rights and Civil Liberties." 6 U.S.C. § 345 merely says that this officer shall "review and assess information concerning abuses of civil rights, civil liberties, and profiling *on the basis of race, ethnicity, or religion*, by employees and officials of the Department.") (emphasis supplied). [6] Likewise, 5 U.S.C. app. 3 § 3 merely addresses the "appointment of [the] Inspector General; supervision; removal; political activities." Lastly, 6 U.S.C. § 253, which is one of several chapters under the heading "Immigration Enforcement Functions," establishes "professional responsibility and

---

[6] No such allegations regarding Plaintiff's race, ethnicity or religion were ever raised in this case.

quality review" for employees of "Immigration and Customs Enforcement" who are facing allegations of "misconduct, corruption and fraud" that are not otherwise "subject to investigation by the Inspector General for the Department."

In short, the statutes cited by Defendants are either proscriptions for the creation of certain offices/titles, or they relate to subject matters that have nothing to do with Plaintiff's allegations in this case (e.g., race, ethnicity, religion, corruption, fraud etc.). It is thus clear that none of these statutes has any relevance to this case. Further, these generic statutes fall far short of implementing a "remedial process" which is "sufficient to secure an adequate level of deterrence" for the type of misconduct at issue in this case. Egbert, 142 S. Ct. at 1807. Accordingly, the District Court erred in holding that these statutes provided an adequate alternative remedy to Plaintiff.

### C. The Federal Judiciary is Uniquely Qualified to Adjudicate Claims of Constitutional Violations.

As part of the "special factors" analysis, courts must also consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Powell v. United States, 2022 U.S. Dist. LEXIS 93314, at *14 (S.D.N.Y. May 24, 2022) (internal citations omitted). Here, there can be no question that federal courts are capable of adjudicating constitutional claims based on fabricated evidence. "The

right [plaintiff] seeks to vindicate—whether framed as a malicious prosecution under the Fourth Amendment or a due process violation under the Fifth—is the right of citizens to be free from prosecution on the basis of false evidence adduced by federal officers." Powell, 2020 U.S. Dist. LEXIS 157801, at *29. "It is no exaggeration to say that this right—which stems from the legal system's unflagging obligation to pursue truth and justice—lies near the core of what the Judicial Branch is entrusted with securing." (Id.). See also Sherman v. United States, 356 U.S. 369, 380 (1958) (Frankfurter, J., concurring) ("The federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice."). As the Ninth Circuit stated in Lanuza v. Love, in language which is equally applicable here:

> Judges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system. Indeed, there are few persons better equipped to weigh the cost of compromised adjudicative proceedings than those who are entrusted with protecting their integrity. And, more often than not, the Judicial Branch, not Congress or the Executive, is responsible for remedying circumstances where a court's integrity is compromised by the submission of false evidence. Thus, it falls within the natural ambit of the judiciary's authority to decide whether to provide a remedy for the submission of false evidence ...

Id. 899 F. 3d 1019, 1032-1033 (9th Cir. 2017).

41

A review of this Circuit's jurisprudence on fabricated evidence claims confirms this conclusion. Specifically, this Court has repeatedly held that an officer's fabrication of evidence violates the accused's constitutional rights and is redressable in a federal civil rights action, even if there was probable cause to arrest. See, e.g., Kee v. City of New York, 12 F.4th 150, 168-169 (2d Cir. 2021); Smalls v. Collins, 10 F.4th 117, 133 (2d Cir. 2021); Morse v. Fusto, 804 F.3d. 538, 548 (2d Cir. 2015); Garnett v. Undercover Officer C0039, 838 F.3d 265, 276, 278-79 (2d Cir. 2016); Zahrey v. Coffey, 221 F.3d 342, 344, 348, 355 (2d Cir. 2000); Jocks v. Tavernier, 316 F.3d 128, 138 (2003).

Further, this Court has expressly held that, in a Bivens action, federal law enforcement officials are responsible for the natural consequences of their actions -- including loss of liberty -- where their initial fabrication of evidence sets in motion the chain of events that leads to plaintiff's deprivation of liberty. See Higazy v. Templeton, 505 F.3d 161, 175 ("Tort defendants, including those sued in Bivens actions, are responsible for the natural consequences of their actions") (internal quotation marks and citations omitted); Zahrey, 221 F.3d at 352 ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").

42

Given this Court's extensive jurisprudence in the realm of fabricated evidence claims, there can be no question that the federal judiciary is "well-suited" to handle a <u>Bivens</u> action based on allegations of fabricated evidence. <u>Powell</u>, 2022 U.S. Dist. LEXIS 93314, at *14. Accordingly, this "special factor" militates in favor of allowing Plaintiff's <u>Bivens</u> claim to proceed.

## III. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S <u>MALICIOUS PROSECUTION CLAIM.</u>

### A. While Plaintiff's Malicious Prosecution Claim Presents a New Context under <u>Bivens</u>, there are No "Special Factors" Which Require Dismissal of this Claim.

Unlike Plaintiff's false arrest claim, her malicious prosecution claim presents a "new context" under <u>Bivens</u>. <u>See Powel</u>, 2020 U.S. Dist. LEXIS 157801 at *18 ("Neither <u>Bivens,</u> nor <u>Davis</u> nor <u>Carlson</u> involved a malicious prosecution claim. In light of this difference, courts in the Second Circuit and in other circuits have held that malicious prosecution claims present a new <u>Bivens</u> context.") (citation omitted). Nonetheless, for the same reasons set forth above (Pt. II, <u>supra</u>), there are no "special factors" which counsel against allowing this claim to proceed along with Plaintiff's false arrest claim. Plaintiff's claim does not involve a national security interest, there is no "remedial process" which is "sufficient to secure an adequate level of deterrence" for the constitutional violations at issue, <u>Egbert</u>, 142 S.Ct. at 1807, and federal courts are uniquely qualified to address claims of fabricated

43

evidence by a law enforcement officers, as this Court has repeatedly demonstrated. <u>Smalls</u>, <u>supra</u>.; <u>Garnett</u>, <u>supra</u>.; <u>Ricciutti</u>, <u>supra</u>.

Moreover, under the Supreme Court's decision in <u>Manuel v. City of Joliet</u>, 137 S. Ct. 911, 580 U.S. 357, 197 L. Ed. 2d 312 (2017), Plaintiff's pre-trial detention is actionable under the Fourth Amendment, regardless of whether such a claim is designated as a "malicious prosecution" claim or merely a continuation of the initial unlawful seizure.    As this Court explained, "[i]n <u>Manuel</u>, the Supreme Court held that a § 1983 plaintiff could challenge his pretrial detention based on purportedly fabricated evidence under the Fourth Amendment, even after a judge determined that this evidence constituted probable cause."   <u>Smalls</u>, 10 F.4th at 141 (quoting <u>Frost v. New York City Police Dep't</u>, 980 F.3d 23 (2d Cir. 2020)).   It follows, then, that, whether Plaintiff's claim is styled as a "malicious prosecution" claim, or merely as a continuation of the original Fourth Amendment violation that occurred inside of her apartment, Defendants are liable under <u>Bivens</u> for "the natural consequences" of their unlawful actions.   <u>Higazy</u>, 505 F.3d at 175. Accordingly, Plaintiff's malicious prosecution claim should be reinstated, along with her false arrest claim, so that a trial on these claims may be held.

## **CONCLUSION**

For the reasons set forth above, Plaintiff-Appellant Karina Sigalovskaya respectfully submits that the District Court's order dismissing her false arrest and

44

malicious prosecution claims under <u>Bivens</u> should be reversed, and this case should be remanded to the District Court for a trial on these claims.

Dated:      New York, New York
             February 16, 2024

                       Respectfully submitted,

                       **JON L. NORINSBERG, ESQ., PLLC**

                       Jon L. Norinsberg, Esq.
                       *Attorneys for Plaintiff-Appellant*
                       110 E. 59th Street, Suite 2300
                       New York, New York 10022
                       Tel. No.: (212) 791-5396
                       Fax No.: (212) 406-6890
                       jon@norinsberglaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Docket Nos.: 23-7625
Case Name: *Sigalovskaya v Braden, et al.*
Document Title: Brief for Plaintiff-Appellant

_____

      Pursuant to Federal Rules of Procedure, I certify that the accompanying Reply Brief, contains 9,185 words, excluding the parts of the document that are exempt under rules of this Court. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 16, 2024

                       **JON L. NORINSBERG, ESQ., PLLC**

                       _____
                       Jon L. Norinsberg, Esq.
                       *Attorneys for Plaintiff-Appellant*
                       110 E. 59th Street, Suite 2300
                       New York, New York 10022
                       Tel. No.: (212) 791-5396
                       Fax No.: (212) 406-6890
                       jon@norinsberglaw.com